UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

'03 DEC -8 P 12:30

U.S. DISTRICT COURT
DISTRICT OF MASS

| | | |
|---|---|---|
| EVERETT J. PRESCOTT, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 03-30297-KPN |
| | : | |
| FERGUSON ENTERPRISES, INC., and | : | |
| RICHARD E. KOSTEK, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Everett J. Prescott, Inc. ("Prescott"), by and through its undersigned counsel, files this Complaint against Defendants Ferguson Enterprises, Inc. ("Ferguson") and Richard E. Kostek ("Kostek"). In support of its Complaint, Prescott avers as follows:

### Nature Of The Action

1.    This action arises out of the misappropriation of Plaintiff Prescott's trade secrets and other confidential, proprietary information by its former employee, Defendant Kostek, and Kostek's new employer, Defendant Ferguson. Among other things, these Defendants' wrongful conduct resulted in Prescott losing and Ferguson gaining a significant supply subcontract with Borges Construction, Inc. ("Borges").

2.    Prescott and Ferguson are competing distributors of water, sewer, and drain products and services. Defendant Kostek was formerly the Manager of Prescott's Red Hed Supply Division. Upon information and belief, Kostek is currently the Manager of Ferguson's local branch of its Eastern Pipe Products Company ("EPPCO") division.

3.    In June 2003, Prescott, acting through Kostek, entered into a subcontract to supply Borges with nearly a quarter million dollars worth of products and services to be used by Borges in a

general contract to repair and extend water and sewer mains in East Longmeadow, Massachusetts (the "Prescott Subcontract").

4.      Within days or weeks of securing the Prescott Subcontract, Kostek quit his job as a Prescott Manager, and took a comparable position at Ferguson.

5.      Almost immediately thereafter, Borges informed Prescott that it had never formally accepted the terms of the Prescott Subcontract (despite prior assertions to the contrary), and that it had, in fact, entered into a different subcontract with Ferguson, acting through Kostek (the "Ferguson Subcontract").

6.      Upon information and belief, Ferguson and Kostek employed Prescott's trade secrets and other confidential, proprietary information in order to underbid the Prescott Subcontract, and to convince Borges to terminate the Prescott Subcontract and award the Ferguson Subcontract.

7.      In this action, Prescott seeks equitable relief against Kostek and Ferguson in the form of an injunction (i) restraining Kostek and Ferguson from using for their own benefit or disclosing to any third party trade secrets and other confidential information which they misappropriated from Prescott; and (ii) restraining Kostek from continuing to breach his fiduciary duties of loyalty and candor to Prescott.

8.      Prescott also seeks an award of damages against Kostek and Ferguson arising from their (i) misappropriation of Prescott's trade secrets and other confidential information; (ii) unfair trade practices; (iii) Kostek's breach of fiduciary duty; (iv) tortious interference with the Prescott Subcontract or, alternatively, tortious interference with Prescott's prospective business relationship with Borges; (v) conversion; and (vi) civil conspiracy.

2

## Jurisdiction And Venue

9.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

10.     Venue is properly laid in this District under 28 U.S.C. §§ 1391(a)(2) or (3) in that (i) a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District; or (ii) one or more of the Defendants is subject to personal jurisdiction in this District.

## The Parties

11.     Prescott is a corporation organized and existing under the laws of the State of Maine, with its principal place of business located at 191 Central Street, Gardiner, Maine 04345.

12.     Ferguson is, upon information and belief, a corporation organized and existing under the laws of the State of Virginia, with its principal place of business located at 12500 Jefferson Avenue, Newport News, Virginia 23602.

13.     Kostek is, upon information and belief, an adult individual who, upon information and belief, (i) is a citizen of Commonwealth of Massachusetts; and (ii) resides at 1 Kennedy Drive, Hadley, Massachusetts 01035.

## Factual Background

### A.    Prescott And Ferguson Are Direct Competitors

14.     Prescott is a provider of water, sewer, and drain products and services throughout the Northeast and Midwest.  The Prescott family of companies includes its Red Hed Supply Division ("Red Hed"), which is located at 123 North Hatfield Road, North Hatfield, Massachusetts.

3

15.    Ferguson is a nationwide distributor of plumbing and building products, industrial pipes, valves, and fittings, heating and cooling equipment, waterworks products, and tool and safety products.

16.    Prescott and Ferguson are direct competitors in the market for water, sewer, and drain products and services throughout the Northeast and Midwest.

**B.    Kostek's Access To Prescott's Confidential Business Information**

17.    Defendant Kostek was hired as the Manager of Red Hed on or about October 15, 2001. Kostek's duties and responsibilities as the Manager of Red Hed included (i) managing and supervising Red Hed employees, including hiring and firing; and (ii) preparing, submitting, negotiating, and implementing bids and contracts for the sale and delivery of Prescott's products and services.

18.    In his role as the Manager of Red Hed, Kostek was provided access to Prescott's confidential business information and documents pertaining to pricing of products and services, as well as actual and potential customers and vendors. This confidential information and documents included c ustomer l ists, p rospective c ustomer l ists, p ricing lists, estimating procedures, policy manuals, vendor lists, prospective vendor lists, bid documents, and contact lists, (collectively, the "Confidential Information").

19.    Prescott expended substantial time, effort and expense in developing the Confidential Information, which is not generally available to the public or to Prescott's competitors.

20.    The Confidential Information derives independent economic value from the fact that it is not generally available to the public or to Prescott's competitors.

4

C.    **The East Longmeadow Job And The Prescott Subcontract**

21.    In or around June, 2003, Kostek, in his capacity as Red Hed's Manager, learned that Borges was preparing to act as the general contractor for a substantial water and sewer main repair and extension project in East Longmeadow, Massachusetts (the "East Longmeadow Job").

22.    Borges requested that Prescott, through Kostek, submit a bid to supply the water, sewer, and drain materials to be used for the East Longmeadow Job.

23.    In response to Borges' request, Kostek, on behalf of Prescott, prepared and submitted to Borges bid specifications for the water, sewer, and drain products and services to be used in the East Longmeadow Job (the "Red Hed Bid"). The total purchase price for the Red Hed Bid was $253,266.04.

24.    Prescott, through Red Hed, had in the past entered into contracts to supply products and services to Borges. In each of those instances, Borges' acceptance of Prescott's bids had been through its verbal asset to the terms of Prescott's specifications and pricing, with Prescott's bid documents serving to set forth the terms of the contracts between the parties.

25.    Some time prior to July 10, 2003, Borges verbally communicated to Prescott its acceptance of the Red Hed Bid, the terms of which comprise the Prescott Subcontract.

26.    In direct reliance upon Borges' acceptance of the Red Hed Bid, Prescott commenced performance of the Prescott Subcontract by placing orders for the manufacture of specialized castings and other components included in the Prescott Subcontract.

**D.**    **Kostek Quits Prescott, Joins Ferguson, And Enters Into The Ferguson Subcontract**

27.    On July 9, 2003, Kostek informed Prescott's President, Steven Prescott, that he was terminating his employment with Prescott, and that he would be taking a similar position with Ferguson.

28.    The next day, on July 10, 2003, Steven Prescott met with Kostek at Red Hed's offices to discuss Kostek's termination of employment with Prescott. At that meeting, Steven Prescott asked Kostek to report on, among other things, the status of the Prescott Subcontract. Kostek denied any knowledge of its status. Kostek's employment by Prescott ceased immediately after the meeting.

29.    Upon information and belief, Kostek commenced employment with Ferguson on July 14, 2003, two business days after termination of his employment with Prescott.

30.    Thereafter, on or about July 17, 2003, Steven Prescott met with a representative of Borges to discuss the status of the Prescott Subcontract. At that meeting, Borges' representative admitted that Borges had entered into the Ferguson Subcontract, through Kostek, and denied that Borges had ever accepted the terms of the Prescott Subcontract.

31.    Upon information, Ferguson, acting through Kostek, secured the Ferguson Subcontract by using Prescott's Confidential Information.

### COUNT I
### Violation of Trade Secrets Act
### (Prescott vs. Kostek and Ferguson)

32.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 31 of this Complaint as if set forth at length herein.

6

33.    Prescott's Confidential Information, including the terms of the Red Hed Bid, constitute "trade secrets" within the meaning of the Massachusetts Trade Secrets Act, 93 M.G.L.A. §42, *et seq*.

34.    Kostek and Ferguson violated the Trade Secrets Act by (i) taking, receiving, and converting to their use Prescott's trade secrets; (ii) using such documents and information in order to secure the Ferguson Subcontract; and (iii) using such documents and information in other matters involving Ferguson's business.

35.    Kostek's and Ferguson's conduct has been willful, wanton, and outrageous, and/or performed with conscious and callous disregard for Prescott's rights.

36.    As a result of Kostek's and Ferguson's wrongful conduct, Prescott has suffered injury and damages.

37.    Unless Kostek's and Ferguson's violations of the Trade Secrets Act are enjoined, Prescott will suffer irreparable harm.

38.    Pursuant to the Trade Secrets Act, Prescott is entitled to injunctive relief, double damages, and recovery of its attorneys' fees incurred in this matter.

**COUNT II**
**Violation of Unfair Trade Practices Act**
**(Prescott vs. Kostek and Ferguson)**

39.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 38 of this Complaint as if set forth at length herein.

40.    Kostek and Ferguson are prohibited by Massachusetts' Unfair Trade Practices Act, 93A M.G.L.A. §11, *et seq.*, from engaging in unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce.

41.    Kostek and Ferguson engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or commerce by, among other things, (i) taking, receiving, and converting to their use Prescott's Confidential Information, including the terms of the Red Hed Bid; (ii) using such documents and information in order to secure the Ferguson Subcontract; and (iii) using such documents and information in other matters involving Ferguson's business.

42.    Prescott has suffered and will continue to suffer the loss of money or property as a result of Kostek's and Ferguson's use or employment of statutorily prohibited methods, acts, or practices.

43.    Kostek's and Ferguson's conduct as described above was willful, wanton, and outrageous, and performed with conscious and callous disregard for the rights of Prescott.

44.    Unless Kostek's and Ferguson's violations of the Unfair Trade Practices Act are enjoined, Prescott will suffer irreparable harm.

45.    Pursuant to the Unfair Trade Practices Act, Prescott is entitled to injunctive relief, treble damages and recovery of its attorneys' fees incurred in this matter.

## COUNT III
### Breach of Fiduciary Duty
### (Prescott vs. Kostek and Ferguson)

46.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 45 of this Complaint as if set forth at length herein.

8

47.    As an agent and employee of Prescott, Kostek owed fiduciary duties to Prescott, including the duties of loyalty and candor.

48.    Kostek breached his fiduciary duties to Prescott by, *inter alia*, (i) misappropriating Prescott's Confidential Information, including the terms of the Red Hed Bid; (ii) using such documents and information in order to secure the Ferguson Subcontract; (iii) conspiring with Ferguson to interfere with Prescott's ability to compete in the sewer and drain products and services market in the Northeast and Midwest in general, and to perform the Prescott Subcontract in particular.

49.    As a result of Kostek's breach of fiduciary duties, Prescott has suffered substantial harm.

50.    Kostek's conduct as described above was willful, wanton, and outrageous, and performed with conscious and callous disregard for the rights of Prescott.

51.    If Kostek is not prevented from continuing to breach his fiduciary duties to Prescott, Prescott will suffer irreparable harm.

### COUNT IV
### Tortious Interference With Contract
### (Prescott vs. Kostek and Ferguson)

52.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 51 of this Complaint as if set forth at length herein.

53.    The Prescott Subcontract was a valid, legally enforceable contract.

54.    Kostek and Ferguson were aware of the terms of the Prescott Subcontract.

55.    Kostek and Ferguson intentionally and improperly interfered with Prescott's

9

contractual relationship with Borges by inducing Borges to repudiate the Prescott Subcontract, and to replace it with the Ferguson Subcontract.

56.     As a result of Kostek's and Ferguson's tortious interference with Prescott's contractual relationship with Borges, Prescott has suffered injuries and damages.

57.     Neither Kostek nor Ferguson acted with legal or equitable justification in interfering with Prescott's contractual relationship with Borges.

58.     Kostek's and Ferguson's conduct in interfering with Prescott's contractual relationship with Borges was willful, wanton, and outrageous, and/or performed with conscious and callous disregard for Prescott's rights.

## COUNT V
### Tortious Interference With Prospective Contractual and Business Relationship
### (Prescott vs. Kostek and Ferguson)

59.     Prescott repeats and realleges each and every allegation of paragraphs 1 through 58 of this Complaint as if set forth at length herein.

60.     Prescott had developed an existing and ongoing business relationship with Borges, as well as a specific, prospective contractual relationship for the supply of products and services for the East Longmeadow Job.

61.     Kostek and Ferguson were both aware of Precsott's business relationship with Borges, and its prospective contractual relationship with Borges regarding the East Longmeadow Job.

62.     Kostek and Ferguson have interfered with those relationships through improper motives and means by (i) making use of Prescott's Confidential Information, including the terms of

10

the Red Hed Bid; (ii) offering to supply products and services for the East Longmeadow Job at a cost that is less than that set forth in the Red Hed Bid; and (iii) entering into the Ferguson Subcontract.

63.    As a result of Kostek's and Ferguson's tortious interference with Prescott's relationships with Borges, Prescott has been unable to consummate the Prescott Subcontract, and has thereby suffered injuries and damages.

64.    Neither Kostek nor Ferguson acted with legal or equitable justification in interfering with Prescott's relationship with Borges.

65.    Kostek's and Ferguson's conduct in interfering with Prescott's relationships with Borges was willful, wanton, and outrageous, and/or performed with conscious and callous disregard for Prescott's rights.

**COUNT VI**
**Conversion**
**(Prescott vs. Kostek and Ferguson)**

66.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 65 of this Complaint as if set forth at length herein.

67.    In the course of his employment with Prescott, Kostek came into possession of materials and information belonging to Prescott, including, but not limited to, the Confidential Information, and the documents comprising the Red Hed Bid.

68.    Kostek and his new employer, Ferguson, have wrongfully taken and retained Prescott's proprietary business information with the intent and effect of depriving Prescott of its exclusive possession and control thereof.

11

69.    The confidential and proprietary business information that Kostek and Ferguson have converted has been developed by Prescott over many years at great expense and is critically important to the operation of Prescott's business.

70.    Kostek's delivery to Ferguson of Prescott's confidential and proprietary business information has provided Ferguson with unfair competitive advantage against Prescott in general, and with respect to the East Longmeadow Job subcontract in particular.

71.    As a result of Kostek's and Ferguson's wrongful conduct, Prescott has suffered injury and damages.

72.    Kostek's and Ferguson's conduct has been willful, wanton, and outrageous, and/or performed with conscious and callous disregard for Prescott's rights.

73.    Unless Kostek's and Ferguson's conversion is enjoined, Prescott will suffer irreparable harm.

## COUNT VII
### Civil Conspiracy
### (Prescott vs. Kostek and Ferguson)

74.    Prescott repeats and realleges each and every allegation of paragraphs 1 through 73 of this Complaint as if set forth at length herein.

75.    Kostek and Ferguson conspired by and among themselves to commit the following willful acts: (i) converting to their use Prescott's Confidential Information, including the Red Hed Bid; (ii) using such information and documents to underbid the Prescott Subcontract; (iii) inducing Borges to repudiate the Prescott Subcontract and substitute for it the Ferguson Subcontract.

76.    Upon information and belief, Kostek and Ferguson have further conspired by and

among themselves to make continuing use of Prescott's Confidential Information in order to further their campaign of unfair competition against Prescott in the future.

77.    The above-described acts were committed against Prescott pursuant to the mutual agreement of Kostek and Ferguson to act together to the detriment of Prescott.

78.    Prescott has suffered and will continue to suffer losses and damages as a result of Kostek's and Ferguson's above-described acts.

79.    Kostek's and Ferguson's conduct in forming and implementing the above-described conspiracy was willful, wanton, and outrageous, and performed with conscious and callous disregard for the rights of Prescott.

### Prayer for Relief

WHEREFORE, Plaintiff Everett J. Prescott, Inc. respectfully requests that this Court enter judgment in its favor and against Defendants Ferguson Enterprises, Inc. and Richard E. Kostek as follows:

(a)    On Count One, granting an injunction enjoining Kostek's and Ferguson's unlawful conduct, awarding Prescott double damages in an amount to be determined at trial, attorney's fees, interest, costs, and such other and further relief as this Court deems just and proper;

(b)    On Count Two, granting an injunction enjoining Kostek's and Ferguson's unlawful conduct, awarding Prescott treble damages in an amount to be determined at trial, attorney's fees, interest, costs, and such other and further relief as this Court deems just and proper;

13

(c)     On Count Three, granting an injunction enjoining Kostek's unlawful conduct, awarding Prescott damages, including punitive damages, in an amount to be determined at trial, interest, costs, and such other and further relief as this Court deems just and proper;

(d)     On Count Four, awarding Prescott damages, including punitive damages, in an amount to be determined at trial, interest, costs, and such other and further relief as this Court deems just and proper;

(e)     On Count Five, awarding Prescott damages, including punitive damages, in an amount to be determined at trial, interest, costs, and such other and further relief as this Court deems just and proper;

(f)     On Count Six, granting an injunction enjoining Kostek's and Ferguson's unlawful conduct, awarding Prescott damages, including punitive damages, in an amount to be determined at trial, interest, costs, and such other and further relief as this Court deems just and proper;

(g)     On Count Seven, awarding Prescott damages, including punitive damages, in an amount to be determined at trial, interest, costs, and such other and further relief as this Court deems just and proper.

Dated:  December 4, 2003                    Respectfully submitted,

 

 

Jennifer Sawyer, Bar No. 640671
Paul McDonald
Bernstein, Shur, Sawyer & Nelson
100 Middle Street
P.O. Box 9729
Portland, Maine 04104-5029
(207) 774-1200

Attorneys for Plaintiff
Everett J. Prescott, Inc.

15